**GOYETTE, RUANO & THOMPSON, INC.**
DEREK K. ULMER (SBN 318255)
GABRIELLA TURNBULL (SBN 362233)
2366 Gold Meadow Way, Suite 200
Gold River, CA 95670
Telephone: (916) 851-1900
Facsimile: (916) 851-1995
derek@grtlaw.com
gabby@grtlaw.com

Attorneys for Defendants,
OTIIMA USA, TAYLOR TITONI, STACY TITONI,
And TITONI WINDOWS SYSTEMS n/k/a
TITONI MANUFACTURING COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OTIIMA INDUSTRIES, S.A., <br><br> Plaintiff, <br><br> vs. <br><br> OTIIMA USA, TAYLOR TITONI, STACY TITONI, and TITONI WINDOWS SYSTEMS n/k/a TITONI MANUFACTURING COMPANY, <br><br> Defendants. <br><br>_____<br><br> OTIIMA USA, TAYLOR TITONI, STACY TITONI, and TITONI WINDOWS SYSTEMS n/k/a TITONI MANUFACTURING COMPANY, <br><br> Cross-Complainants. <br><br> vs. <br><br> OTIIMA INDUSTRIES, S.A., and Does 1-25. <br><br> Cross-Defendants | Case No. 2:25-cv-06449-MWF-JPR <br><br> *Judge:*         *Michael W. Fitzgerald* <br> *Complaint Filed:*  *July 15, 2025* <br> *Trial Date:*      *TBD* <br><br> **CROSS-COMPLAINT** |

Cross-Complainants OTIIMA USA, STACY TITONI, TAYLOR TITONI and TITONI WINDOWS SYSTEMS n/k/a TITONI MANUFACTURING COMPANY (collectively, "Cross-Complainants"), for their cross-complaint against OTIIMA INDUSTRIES, S.A.; and DOES 1 through 25, inclusive (collectively, "Cross-Defendants"), allege as follows:

## PARTIES

1. Cross-Complainant Otiima USA is a California corporation with a principal place of business at 1113 N. McKinley Ave., Los Angeles, CA 90059.

2. Cross-Complainant Taylor Titoni is owner and the Chief Executive Officer (CEO) of OTIIMA USA and Titoni Window Systems.

3. Cross-Complainant Stacy Titoni is owner and Secretary and Chief Financial Officer (CFO) of OTIIMA USA and Titoni Window Systems.

4. Cross-Complainant Titoni Windows Systems, n/k/a Titoni Manufacturing Company is a California corporation with a principal place of business at 145 Arena St., El Segundo, CA 90245.

5. Cross-Defendant Otiima Industries, S.A., formerly Ecosteel, S.A., is a Portuguese Sociedade Anónima with its business address at Parque Industrial de Laúndos, lote 40, 4570-311 Laúndos, Póvoa de Varzim, Portugal.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this case under 28 U.S.C. §1331. To the extent that this cause of action also arises under the Lanham Act, 15 U.S.C. § 1051 et seq., jurisdiction is expressly conferred in accordance with 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a). This action arises in part under the laws of the United States, 15 U.S.C §§ 1025 et seq. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 (a) of the state law claims, all of which arise out of and have a nexus to the facts giving rise to the federal claim, and therefore form a part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and/or (2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

8. This Court has personal jurisdiction over Defendant because it has engaged in acts within this judicial district giving rise to the claims asserted herein.

## FACTUAL BACKGROUND

9. In July 2016, Stacy and Taylor Titoni traveled to Portugal to meet with José Maria, the founder of Ecosteel, which at the time used the "OtiMAH!" brand. Ecosteel had no U.S. presence or plan to enter the U.S. market. In October 2016, they returned to Portugal and entered into a handshake agreement with José Maria to become the exclusive partner for EcoSteel products in the United States.

10. Beginning in late 2016, the Titonis created OTIIMA USA. By 2017, OTIIMA USA was independently fabricating and glazing critical system components in Los Angeles. OTIIMA USA expanded its U.S. operations, securing a 40,000 sq. ft. headquarters and warehouse in Los Angeles. The company received material from the Portugal factory, sourced glass from the United States, and assembled the finished product in their Southern California factory. They built an in-house fabrication and assembly line, invested in state-of-the-art CNC machinery, and hired an elite U.S.-based team of engineers and quality-control experts. The Titonis were responsibile for introducing and building the OTIIMA brand in the United States. They invested their own capital in marketing, testing, client development, and warranty management. Between 2016 through 2025, OTIIMA USA bore the sole financial burden of U.S. testing and certification, including NFRC, AAMA, STC, and Miami-Dade standards, at a cost of millions of dollars.

11. During this time, Taylor and OTIIMA USA's engineers worked directly with Ecosteel's team to design and improve several systems, including the shallow sill, Plus Series modifications, and drain track enhancements. Many of these innovations remain in use by Otiima S.A. today.

12. OTIIMA USA is the importer of record of every shipment that has been brought into the U.S. from the factory in Portugal. OTIIMA S.A. has not imported any product directly into the U.S. All the products shipped from OTIIMA S.A.'s facilities arrived in the U.S. under OTIIMA USA's custody and care – to be manufactured, and distributed. At no time did OTIIMA S.A. engage in U.S. marketing or deal with U.S. directly.

13. In June 2018, Ecosteel formally abandoned the OTIIMA brand and operated under the name "Much More Than a Window" (MMTW). OTIIMA USA continued receiving quotes under the MMTW name until at least August 2021, when Ecosteel began again using the OTIIMA name. During

this period, OTIIMA USA retained, continuously used, and promoted the OTIIMA brand in the United States, including designing its own distinctive negative-space "A" logo in February 2019.

14. In 2022, Ecosteel attempted to have OTIIMA USA assign its trademark to them. In return for this assignment, OTIIMA USA would receive an exclusive agreement that any Ecosteel product sold in the United States would be through OTIIMA USA.

15. OTIIMA USA signed the assignment and sent the written contract to Ecosteel for execution. However, Ecosteel did not sign the contract. Four months, on August 22, 2022, they returned a draft contract with terms that the parties did not contemplate or agree. OTIIMA USA refused to sign the contract. The parties continued to do business under their previous supplier/manufacturer relationship without a written contract.

16. In 2023, Vanguard Properties acquired Ecosteel. On February 26, 2024, Vanguard rebranded the company as Otiima S.A. and attempted to capture the goodwill OTIIMA USA had built in the U.S. over nearly a decade, and use it to expand its global presence.

17. Following Vanguard's acquisition, the Portugal factory suffered a steep decline in production standards. OTIIMA USA began experiencing critical production errors, incomplete shipments, escalating service failures, and significant delivery delays. Important personnel, including the former CEO José Maria, departed the company.

18. By late 2024, the failures became untenable, threatening OTIIMA USA's client relationships and project schedules. At one point, OTIIMA USA had a list of fifteen projects that all delayed by months. Additionally, the quality had a steep decline. OTIIMA USA employees questioned whether Otiima S.A. was purposely sabotaging OTIIMA USA.

19. By May 9, 2025, OTIIMA USA issued an immediate pause on business to Otiima S.A. after repeated service failures and immediately ceased placing further orders with the Portugal factory. OTIIMA USA simultaneously transitioned to fully domestic aluminum sourcing and redesigned more than 150 profiles for improved thermal efficiency, weatherproofing, and performance.

20. In May 2025, OTIIMA USA notified its dealers and industry professionals—including architects, builders, and homeowners—that it was transitioning to U.S.-made systems. These

communications emphasized that the systems would remain consistent in design but with superior quality, faster lead times, and no exposure to tariffs. The response was overwhelmingly positive.

21. OTIIMA S.A. began contacting OTIIMA USA's architects, builders, and homeowners, intentionally confusing them, misrepresenting that the products they ordered were no longer valid, even though Otiima S.A. did not have any contracts with those architects, builders, and homeowners.

22. OTIIMA USA had multiple customers reach out concerned that they would not be receiving the product they ordered. OTIIMA USA had to post a Frequently Asked Questions page on its website in order to resolve OTIIMA S.A.'s misrepresentations.

23. OTIIMA USA built the OTIIMA brand in the United States. It bore the costs of testing, certifications, and marketing, and it managed warranties and client relationships for nearly a decade. The goodwill associated with OTIIMA in the U.S. market exists because of OTIIMA USA's work—not the factory in Portugal.

## COUNT ONE

(Declaratory Relief v. All Counterclaim Defendants)

24. This Count is brought pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 and 2202 for a declaratory judgment that OTIIMA USA is the exclusive owner of all intellectual property rights relating to the OTIIMA USA brand, including, without limitation, the OTIIMA USA trade name, the OTIIMA USA trademark, the OTIIMA USA Trade Dress, any and all common law trademarks and copyrights, and the OTIIMA USA.com domain name ("OTIIMA USA IP Rights"), and that if OTIIMA S.A uses the OTIIMA USA IP Rights with associated windows in the United States, Counterclaim Defendants are liable for statutory trademark, trade name, and trade dress infringement under the Lanham Act, including Sections 32 and 44 of the Lanham Act, in the form of both forward and reverse confusion, violation of Section 43(a) of the Lanham Act, common law unfair competition, trade dress infringement, tarnishment of OTIIMA USA's service marks and trade name, dilution under both the Lanham Act and applicable state statutes, and that they are also liable for unjust enrichment and interference with prospective business relations, and also in violation of the applicable state statutes relating to deceptive trade practices, and hence OTIIMA USA seeks a declaratory judgment:

a. That Counterclaimants do not and have not infringed on any intellectual property rights of Counterclaim Defendants;

b. That the OTIIMA USA IP Rights are valid, subsisting and owned exclusively by OTIIMA USA;

c. That any use by Counterclaim Defendants of any of the OTIIMA USA IP Rights, or any mark(s) confusingly similar thereto, for ballet dancewear products or related goods or service would infringe upon the statutory and common law rights of OTIIMA USA.

d. That OTIIMA USA is entitled to a declaratory judgment that the OTIIMA S.A. Registrations are valid, subsisting and owned by OTIIMA USA, and that if Counterclaim Defendants associate ballet dancewear products or related goods or services under the OTIIMA USA IP Rights, or any other mark(s) confusingly similar thereto, such actions would constitute infringement;

e. That OTIIMA S.A.'s Registrations are not incontestable nor conclusive evidence of OTIIMA S.A.'s ownership of the marks, but are subject to cancellation or transfer pursuant to 15 U.S.C. § 1052(c) because the name OTIIMA USA represents and identifies a particular living individual, namely Mr. OTIIMA USA, who revoked his consent to OTIIMA S.A.'s registration of his personal name as a trademark, and is therefore damaged by the existence of each of the OTIIMA S.A. Registrations because each creates a false perception that OTIIMA USA is currently affiliated with, sponsored by, or endorsed by OTIIMA S.A. when that is not the case;

f. That OTIIMA S.A.'s Registrations are not incontestable nor conclusive evidence of the OTIIMA S.A.'s ownership of the marks, but are subject to cancellation or transfer pursuant to 15 U.S.C. § 1115(b)(1) because OTIIMA S.A. obtained the registrations fraudulently as set forth with particularity herein;

g. That OTIIMA S.A.'s Registrations are not incontestable nor conclusive evidence of the OTIIMA S.A.'s ownership of the marks, but are subject to cancellation or transfer pursuant to 15 U.S.C. § 1115(b)(3) because OTIIMA S.A. has used the registered marks so as to misrepresent to the consuming public the source of the goods or services, on and in connection with which the marks were used;

h. That OTIIMA S.A.'s Registrations are not incontestable nor conclusive evidence of the OTIIMA S.A.'s ownership of the marks, but are subject to cancellation or transfer pursuant to 15 U.S.C. § 1115(b)(9) under equitable principles, including laches, estoppel, and acquiescence; and

i. That Counterclaim Defendants be enjoined from its use of the OTIIMA USA IP Rights in association with ballet pointe shoes, dancewear products and/or confusingly similar uses.

## COUNT TWO

(Federal Unregistered Trademark Infringement)

25. OTIIMA USA repeats and incorporates herein by reference Paragraphs 1 through 118 above.

26. This cause of action arises under 15 U.S.C. § 1125(a).

27. Counterclaim Defendants' knowing adoption and use of marks and trade dress that is identical to OTIIMA USA's and OTIIMA USA Trade Dress, without consent, will likely cause – and in fact has already caused – confusion among ordinary consumers as to the source of their goods.

28. Counterclaim Defendants' intentional misappropriation of the Model Marks and OTIIMA USA Trade Dress will destroy the valuable brand equity that OTIIMA USA has built into its marks, harm the value of its marks, dilute the identity, and prevent it from controlling its reputation and goodwill with the public.

29. Counterclaim Defendants' actions are likely to cause the public to conclude incorrectly that OTIIMA S.A.'s windows come from OTIIMA USA, which will damage both OTIIMA USA and the consuming public.

30. Counterclaim Defendants' unauthorized use of marks identical to the Model Marks and OTIIMA USA Trade Dress described above constitutes passing off, and is likely to cause consumer confusion, mistake, or deception.

31. Counterclaim Defendants' marketing and sale of OTIIMA S.A.'s windows infringes OTIIMA USA's common law trademark in violation of 15 U.S.C. § 1125(a).

32. As a direct and proximate result of Counterclaim Defendants' infringement, OTIIMA USA has been damaged. OTIIMA USA is thus entitled to recovery of damages, multiple damages, reasonable attorneys' fees, prejudgment interest, and costs pursuant to 15 U.S.C. § 1117(a) and (b).

33. OTIIMA USA has no adequate remedy at law. If OTIIMA S.A.'s willful and intentional acts of passing off are not enjoined, OTIIMA USA will continue to suffer immediate and continuing irreparable harm and injury to its reputation and goodwill attached to its Model Marks and OTIIMA USA Trade Dress.

34. As a result of said infringement, OTIIMA USA has suffered and continues to suffer substantial injury, including irreparable injury, for which it has no adequate remedy at law.

## COUNT III

(Trademark Infringement - California Law)

35. Cross-Complainant re-alleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

36. Cross-Complainant owns all common law right, title and interest in and to Otiima's Marks, and the goodwill therein.

37. Cross-Complainant's rights in and to Otiima's Marks are prior to the acts committed by Cross-Defendants as described herein.

38. As described above, Cross-Defendants are using and will continue to use trademarks identical or confusingly similar to Otiima's Marks for goods and services related to those offered by or threatened to be offered by Cross-Complainant.

39. Cross-Defendants' unauthorized use in commerce of Otiima's Marks as alleged herein is likely to deceive (and has already deceived) consumers as to the origin, source, sponsorship, or affiliation of Cross-Defendants' goods. Likewise, Cross-Defendants' use of Otiima's Marks is likely to cause (and has already caused) consumers to believe, contrary to fact, that Cross-Defendants' infringing goods are sold, authorized, endorsed, or sponsored by Cross-Complainant, or that Cross-Defendants are in some way affiliated with or sponsored by Cross-Complainant.

40. Cross-Defendants' acts and conduct complained of herein constitute trademark infringement in violation of California common law.

41. Cross-Complainant has suffered, and will continue to suffer, irreparable harm from Cross-Defendants' acts and conduct complained of herein, unless restrained by law.

42. Cross-Complainant has no adequate remedy at law.

## COUNT IV

(Unfair Competition Under Business And Professions Code § 17200)

43. Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

44. Plaintiff owns all right, title and interest in and to Otiima's Marks, and the goodwill therein, for the Otiima goods.

45. Plaintiff's rights in and to Otiima's Marks are prior to the acts committed by Defendants as described herein. As described above, Defendants are using and will continue to use trademarks identical or confusingly similar to Otiima's Marks for goods and services related to those offered by or threatened to be offered by Plaintiff.

46. Defendants' unauthorized use in commerce of Otiima's Marks as alleged herein is likely to deceive (and already has deceived) consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods, and is likely to cause (and has already caused) consumers to believe, contrary to fact, that Defendants' infringing products are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff. Defendants' conduct constitutes unlawful, unfair, and fraudulent business acts as well as deceptive, untrue, or misleading advertising.

47. Defendants' acts and conduct complained of herein constitute unfair competition in violation of California law.

48. Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

49. Plaintiff has no adequate remedy at law.

## **COUNT V**

(Tortious Interference with Contract)

50. Cross-Complainants repeat and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

51. Cross-Complainants maintained valid contracts with U.S. customers for sales and installation of OTIIMA USA-branded products. Once OTTIMA USA signed a contract with a customer,

1  they would order material from Otiima S.A. Once OTIIMA USA ceased working with Otiima S.A.,
2  Otiima S.A. used the knowledge of the customers to directly interfere.

3      52.    Otiima S.A. knowingly and intentionally interfered with those contracts by contacting
4  customers, misrepresenting its rights, and threatening legal action.

5      53.    Otiima S.A.'s interference caused customers to breach or delay performance, resulting in
6  lost revenue.

## COUNT VI

(Tortious Interference with Prospective Economic Advantage)

9      54.    Cross-Complainants repeat and reallege each and every allegation contained in the
10  preceding paragraphs as though fully set forth herein.

11      55.    Cross-Complainants had ongoing and prospective business relationships with architects,
12  developers, and distributors.

13      56.    Otiima S.A. intentionally disrupted those relationships through wrongful acts including
14  misrepresentations of ownership and threats of litigation.

15      57.    But for Otiima S.A.'s interference, Cross-Complainants had a reasonable probability of
16  continued economic relationships and profits.

17      58.    As a result, Cross-Complainants suffered damages.

## COUNT VII

(Fraudulent Misrepresentation)

20      59.    Cross-Complainants repeat and reallege each and every allegation contained in the
21  preceding paragraphs as though fully set forth herein.

22      60.    Cross-Defendant Otiima Industries, S.A. and its predecessor EcoSteel knowingly made
23  false representations of material fact to Cross-Complainants, including but not limited to:

24      a. That Otiima S.A. owned and controlled the OTIIMA trademark and associated goodwill in
25  the United States, when in fact Cross-Complainants had built and exclusively maintained such goodwill
26  since 2016.

b. That Otiima was a financially stable and reliable manufacturing partner after its acquisition by Vanguard Properties, when in fact the Portugal factory suffered a steep decline in production standards, incomplete shipments, and key personnel departures.

c. That Otiima had authority to interfere with or void Cross-Complainants' contracts with U.S. architects, builders, and homeowners, when in fact Otiima S.A. had no contractual relationship with those parties.

d. That Otiima S.A. intended to maintain and support the long-term exclusive distributorship with Cross-Complainants, in return for an assignment of trademark, when in fact it later abruptly terminated the relationship without transition and sought to appropriate the goodwill developed by Cross-Complainants.

61. At the time these representations were made, Cross-Defendant knew them to be false, or made them recklessly and without regard for their truth.

62. Cross-Defendant made these misrepresentations with the intent to induce Cross-Complainants to act in reliance, including to continue investing millions of dollars into marketing, testing, certifications, and customer relationships in the United States, and to delay transition to independent domestic production.

63. Cross-Complainants reasonably relied on these misrepresentations, believing them to be true, and continued to devote substantial resources to building the OTIIMA brand in the United States, placing further orders, and maintaining relationships with architects, builders, and homeowners under the belief that Otiima S.A. was a committed and reliable supplier.

64. As a direct and proximate result of Cross-Defendant's fraudulent misrepresentations, Cross-Complainants suffered substantial damages, including but not limited to lost profits, wasted expenditures, damage to reputation, and harm to customer relationships.

65. Cross-Complainants are entitled to compensatory damages in an amount according to proof at trial, as well as punitive and exemplary damages to punish and deter such fraudulent conduct.

## PRAYER FOR RELIEF

**WHEREFORE,** Cross-Complainants request the Court grant judgment in favor of Cross-Complainants and against Cross-Defendant and DOES 1 through 25, inclusive, as follows:

A. Declaratory judgment that Cross-Complainants are the rightful owners of the OTIIMA mark in the United States;

B. Permanent injunction barring Otiima S.A. from using or enforcing the OTIIMA mark in the United States;

C. Compensatory damages according to proof;

D. Punitive and exemplary damages on the fraud claim;

E. Attorneys' fees and costs as provided by law; and

F. Such other relief as the Court deems just and proper.

Dated: August 23, 2025                                    **GOYETTE, RUANO & THOMPSON, INC.**

_____
DEREK K. ULMER
GABRIELLA TURNBULL
Attorneys for Defendants
OTIIMA USA, TAYLOR TITONI, STACY TITONI, and TITONI WINDOWS SYSTEMS n/k/a TITONI MANUFACTURING COMPANY